# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

### CASE  NO: 2:15-CR-00076–JES-CM-1

THE UNITED STATES OF AMERICA,

     *Plaintiff*,

vs.

Yaisel Rodriguez

     *Defendant*.

_____/

### DEFENDANT'S SENTENCING MEMORANDUM OF LAW

COMES NOW, the undersigned, on behalf of the Defendant, Yaisel Rodriguez, and respectfully files this Sentencing Memorandum of Law for the above-referenced case.

The Defendant was charged with 4 counts: one count of production of child pornography; one count of committing sexual activity with a minor; one count of receiving and distributing child pornography; and one count of possession of child pornography.  The Defendant entered into a plea agreement with the United States, resulting in a guilty plea as to Count 1 of the indictment, production of child pornography which carries a minimum penalty of 15 years with a maximum of 30 years. The United States agreed to dismiss the remaining three counts and will recommend a three level reduction based on acceptance of responsibility, the Defendant's cooperation and timely notification of intention to enter plea.

United States Probation Office (USPO) submitted a pre-sentence investigation report (PSR) which calculated a total offense level of 43 with a Sentencing Guidelines' (hereinafter referred to as "Guidelines") range of life, which exceeds the statutory maximum of 30 years. While the Defendant agrees with the accuracy of the USPO's calculation, we submit that the sentence is grossly unfair and excessive under the circumstances of this case.

In *Koon v. United States,* the Supreme Court wrote: "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[1]  Despite the Guidelines being the starting point from which the Court must begin their analysis, it is still very much within the Court's discretion to impose a sentence that is fair and just.

Based on the arbitrary nature of the base level offense coupled with the application of excessive, unnecessary and redundant specific offense characteristic enhancements, this memorandum, pursuant to Title 18 § 3553, will request an extraordinary variance from the present Guidelines's calculation.

## A BASE OFFENSE LEVEL OF 32 IS AN ARBITARY AND UNJUSTIFIABLE STARTING POINT

Chief Judge Bataillon of the District of Nebraska stated in *United States v. Baird* [2] that the sentencing ranges of imprisonment are "a less reliable appraisal of a fair sentence."  He based that rationale on the history of the child pornography guidelines and how the Commission has continuously increased penalties and assigned minimum mandatories without substantiating these changes with actual research and instead, relying on the statutory construction of Congress.

---

[1] *United States v. Grober,* 595 F. Supp. 2d 382, 383 (D.N.J. 2008) aff'd, 624 F.3d 592 (3d Cir. 2010), citing *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

[2] *580 F.Supp.2d 889, 893–94 (D.Neb.2008).*

Chief Judge Pratt in *United States v. Shipley,* 560 F.Supp.2d 739, 744 (S.D.Iowa 2008) echoed Judge Bataillon's point:

> The guidelines for child exploitation offenses were not developed using an empirical approach by the Sentencing Commission, but rather were mainly promulgated in response to statutory directives. Specifically, the Protect Act directly amended guideline 2G2.2 by amending the guideline enhancements for specific offense characteristics. These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.

In *United States v. Hanson*[3], Judge Lynn Adelman cites to an article by Troy Stabenow entitled, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008) 23–24.), stating that the article's observations and conclusions "hit home" in the case before him, where an offender "who appeared fairly typical, one with no prior record, found himself in a guideline range that exceeded the statutory maximum at the high end."

Judge Adelman came to the conclusion that "given all of the flaws" in 2G2.2, the sentencing range do not deserve deference, and also discussed the excessive and redundant nature of the guidelines and the specific offense characteristics.

> The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of acceptance of responsibility for Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. the use of a computer,

---

[3] *561 F.Supp.2d 1004 (E.D.Wis.2008).*

3

> material involving children under the 12 years of age, number of images)." *See* Amendment 664, U.S.S.G.App. C "Reason for Amendment", (November 1, 2004).

The cases and judiciary cited were referring to section 2G.2 under the guidelines, which refers to the crime of possession, however the concepts are the same. The instant offense level is 32, a mere 11 levels shy of a life sentence, irrespective of whether this is a first time offense or not. There is no data to support this offense level except, as Chief Judge Pratt in *United States v. Johnson* [4] stated poignantly, "the general revulsion that is associated with child exploitation-related offenses."

## DOWNWARD VARIANCE PURSUANT TO 18 § 3553

After *Booker*, sentencing requires two steps.  First, the district court must consult the Guidelines and correctly calculate the range provide by the Guidelines. (Citation omitted). Second, the district court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. [11]

---

[4] *588 F.Supp.2d 997, (N.D.Iowa 2008).*
[11] *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

4

A sentence within the Guidelines range is not per se reasonable and is advisory in nature. The sentencing guidelines "should be the starting point and the initial benchmark" in all sentencing proceedings.[5] However, as the United States District Court Judge Katharine S. Hayden put it in *United States v. Grober*:

> When the bottom of the guidelines for a defendant entering a plea is just months shy of the 20 year statutory maximum, one gets busy asking questions about how that happened. This Court has asked itself: Am I working with a rational sentencing structure, or administering the Code of Hammurabi? A Texas defense lawyer in a similar case posed the question starkly in a brief published on the internet: Have we gone mad? [6]

Pursuant to 18 U.S.C. § 3553(a), the facts in this case call for an extraordinary downward variance from the applicable Guidelines sentence. Section 18 U.S.C. § 3553(a) directs a court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth". A review of the relevant facts as applied to the factors demonstrates that an appropriate sentence may be had without the imposition of thirty years in prison.

**(1)    The nature and circumstances of the offense and the history and characteristics of the Defendant. 18 U.S.C. § 3553(a)(1)**

We will provide a description of the nature and circumstances of the offense, as well as the history and characteristics of the Defendant, all in an effort to illustrate how in this case, the Guidelines have failed to adequately account for all pertinent issues and reach a fair and appropriate sentence.

---

[5] *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007).
[6] *United States v. Grober*, 595 F. Supp. 2d 382, 384 (D.N.J. 2008) aff'd, 624 F.3d 592 (3d Cir. 2010).

## Nature and Circumstances of the Offense

The investigation against the Defendant resulted after FBI task force agents came across an IP address associated with the Defendant's home in Cape Coral that had been linked to child pornography downloads during an undercover operation on a peer to peer network. Once at the Defendant's residence, the agents located and interviewed the Defendant who admitted to having downloaded child pornography since he was a teenager as a coping mechanism to having been raped by a family friend from age 8 to approximately 13.

The Defendant also shared with the agents that he had been in a relationship for the previous two years with an individual living in Ohio. The person, C.W., was a minor that the Defendant met through a chat room.

Prior to ever meeting C.W., the Defendant requested permission from C.W.'s mother to see him and become romantically involved with him. The Defendant even went as far as to send copies of his driver's license to C.W.'s mother. During the course of their relationship which commenced when C.W. was 14, the Defendant and him engaged in sexual acts and recorded or documented these acts through video or photographs. These videos and photographs are the basis of the case at hand.

Part of the problem with the present Guideline calculation is that it equates the facts described as equal to a defendant who targets and exploits children to create child pornography for profit and general distribution, or one who uses his position as a caregiver of children to sexually violate a child.

6

**<u>Statutory Minimum Mandatory of 15 years is Sufficient but not</u>**
**<u>Greater Than Necessary to Punish the Defendant</u>**

Production of child pornography is a heinous and despicable crime that victimizes the most defenseless and innocent class of people in our society, which is the well intentioned basis for such lofty sentences even for a first time offender. It is clear that the Sentencing Commission intended to send a message to the perpetrators that these horrific crimes will not be tolerated.

The Defendant is facing a minimum sentence, absent any motion from the Government, of fifteen years. The base offense level, as a first time offender is 32. The specific offense characteristics applied in the PSR place him at a level 51.

The Defendant has accepted responsibility, is remorseful for his actions and understands he must be punished.  However facts of this case should be highlighted in order for the Court to issue a proper sentence.

1. The videos were created by either the Defendant or voluntarily by C.W., the minor in this case.

2. The videos were not meant for distribution to any third parties or for profit or trade.

3. The videos were meant solely for the personal use of both parties.

4. The videos depicted images between a 23-24 year old man-child who suffered years of sexual abuse rendering him emotionally and mentally stunted and a 14-15 year old who willingly videotaped the conduct.

These factors, while not a defense to crime, are valid in distinguishing this conduct from more serious versions of this offense.  While the Defendant committed a very serious offense for which he should be punished, a sentence of fifteen years incarceration followed by supervised release is more than sufficient.

### Two Level Enhancement for Commission of a Sexual Act is Redundant and Unnecessary

The offense for which the Defendant is being sentenced involves the coercion or enticing of a minor with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct. This specific offense characteristic is inherent to production of child pornography.

In *United State v. McDade*, the Court affirmed the application of USSG § 2G2.1(b)(1)(B) in a case where the Defendant did not engage in the sexual act but was the "cameraman". The Court rejected the argument that the enhancement should not apply because the Defendant was not actually engaged in the sexual conduct.[7] If this enhancement applies irrespective of whether the Defendant was actually engaged in sexual conduct, then it stands to reason that this characteristic is an essential part of every case involving the production of child pornography and constitutes impermissible double counting.

---

[7] *United States v. McDade*, 399 Fed. Appx. 520 (11th Cir. 2010).

Impermissible "double counting" occurs when precisely the same aspect of defendant's conduct factors into his sentence in two separate ways.[8] Here the Defendant is already being penalized through a minimum mandatory sentence for production of child pornography. It is unnecessary to add an additional two levels to his sentence for conduct that is intrinsic to the crime for which he is already being punished.

## Two Level Enhancement for Distribution Should Not Apply

The distribution that is the basis for this enhancement relates to relevant conduct relating to the downloading and distributing of child pornography via Internet programs and not the conduct to which the Defendant has pled. The PSR makes reference to the Defendant having distributed child pornography on a peer-to-peer network as the basis for the enhancement.

The Defendant never distributed or published to any third party the visual depictions produced by him or C.W. The spirit of the enhancement for distribution does not pertain to the facts described and to apply it is another way that the Guidelines fail to appreciate the tru nature of the facts in this case.

## Material Between Defendant and C.W. Did Not Contain Sadistic and Masochistic Conduct

Evidence of sadomasochistic depictions, as defined by the case-law (i.e. "violence" per se, consisting of the prepubescent minor being penetrated in some way) is not found in any of the videos involving the Defendant and C.W. The basis for this four level enhancement is relevant conduct based on video downloaded by Defendant and found in his computer. The

---

[8] *United States v. Farrow*, 198 F.3d 179 (6th Cir. 1999).

Defendant never produced or caused to produce any such depictions involving violence or penetration to C.W.

### Two Level Enhancement If C.W. was in the Custody, Care or Supervisory Control of the Defendant Should Not Apply

In determining whether to apply this enhancement, the Court should look to the actual relationship that existed between the Defendant and the victim. [9] The PSR fails to set forth the evidence to support this enhancement however, it is anticipated that the applicability of the enhancement is based on fact that C.W. visited the Defendant without his family on at least one occasion.

The Defendant met C.W. through the Internet.  C.W. and his family came from Ohio to Florida to visit the Defendant and the entire group spent time together.  On another occasion, C.W. came to visit the Defendant and stayed with him at the Defendant's parents' home.  The Defendant was not C.W.'s caretaker, parent, guardian, teacher or any other authoritative role. C.W. was never in the sole custody or care of the Defendant. C.W. resides with his mother and the Defendant resides with his parents. C.W.'s mother had previously visited the Defendant's home and was aware of the Defendant's living arrangements.

The Defendant barely exercised control over his own person in that he is completely reliant on his parents. He does not hold steady employment, drive a motor vehicle or otherwise support himself. At no point did the Defendant exercise supervisory control over the C.W.

---

[9] *United States v. Chasenah*, 23 F.3d 337, 339 (10th Cir. 1994).

10

This is another example of where the Guidelines miss the mark.  Very much like the argument regarding the application of the enhancement for distribution, this enhancement was created to penalize adults who use their position of power or supervision to prey on and abuse children.  It was not intended for this type of scenario.  Again, just because the facts may be applied does not mean it is the fair, proper or correct thing to do under the circumstances.

### Two Level Enhancement Under USSG § 2G2.1 (b)(6)  for Production Involving Use of Computer to Solicit a Minor to Engage in Sex is Excessive

It is anticipated that the applicability of this enhancement is based on the Defendant and C.W. having used computers to communicate and forge their relationship.

In today's world, very little is done without the use of computers, let alone the crimes that overwhelmingly take place over the Internet with the use of computers. It is so pervasive among these types of cases that the Department of Justice has called for the removal of the use of a computer as a specific offense characteristic.[10]

The Defendant and C.W. used the computer throughout the course of their relationship. Is a two level enhancement necessary and appropriate under the circumstances when the imposition a fifteen-year minimum mandatory sentence awaits?

The other portion of this enhancement is inapplicable.   The Defendant did not misrepresent his identity to entice C.W. To the contrary, the Defendant provided his information

---

[10] *See Letter to the Honorable Judge Patti Saris, Chair of the United States Sentencing Commission, Department of Justice (March 5, 2013), available at* http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf.

including a photocopy of his driver's license to C.W.'s mother and requested permission from her to see C.W.

### Five Level Enhancement for a Pattern of Conduct Involving Prohibited Sexual Conduct is Clearly Excessive in Light of Additional Two Level Enhancement for Sexual Conduct

It is important that the Court understand who the victim is in this case and the relationship between him and the Defendant before imposing a sentence. Both the Defendant and C.W. felt they were in a relationship as boyfriends to each other. They both viewed each other as a couple and acted as such. While we fully recognize that the law is clear that a 14, 15 or 16 year old is not legally capable of consent, it should still be noted that video footage depicted C.W. as a willing and aggressive participant in the sexual conduct. The evidence shows a sexually developed young male in C.W. who engaged in these acts freely and voluntarily.

The Defendant recognizes that as the older of the two he was wrong to have engaged in this relationship and his actions were inexcusable. He is already receiving a two level enhancement for engaging in sexual conduct with a minor. In what is the epitome of redundancy and overkill, this enhancement adds five more levels because they had sex more than one time. These were not instances where a victim was repeatedly raped violated and cried out for help. Under the circumstances described, a seven level increase is excessive and unnecessary under the circumstances.

### The Defendant is not receiving any consideration under the guidelines for accepting responsibility and timely pleading guilty pursuant to §3E1.1 (a) and (b)

The Defendant cooperated with the Government from the outset. When law enforcement came to the Defendant's residence to execute the search warrant, the Defendant spoke to them

willingly and allowed the conversation to be recorded. He was candid and open with them despite knowing the trouble he was in.

After the Defendant was arrested, he timely pled guilty and has accepted responsibility for his actions. As another demonstration of his willingness to cooperate, he has spent the last seven months attempting to provide the Government with information that may assist them in future investigations and has promised to continue to provide information as he recalls it.

Despite his best efforts, under the current guideline calculation, the Defendant will not receive any consideration for acceptance of responsibility pursuant to §3E1.1 (a) and (b). The PSR recommends a sentence well above the 360 month maximum sentence which results in the Defendant not receiving any benefit to pleading guilty and accepting responsibility for his actions.

## History of Defendant

The Defendant is 25 years old.  He came to the United States at the age of four after seeking political asylum in Sweden. The Defendant was able to graduate from high school and attain his associate's degree but suffered from severe anxiety and depression growing up as a result of being the victim of ongoing sexual abuse.

The Defendant was sexually assaulted and brutally raped for five years by a family friend, who also happened to be a neighbor, beginning from the age of 8. On occasion the neighbor would invite a friend over who would also sexual assault and rape the Defendant. This abuse went unnoticed and unreported up until the Defendant was being investigated in the present case. The Defendant never confided in his parents and never received any treatment. The

first treatment the Defendant ever received was after law enforcement executed the search warrant that led to his arrest and the Defendant finally opening up about what was done to him.

The Defendant has been incarcerated since March of 2015.

### Characteristics of Defendant

The Defendant is a mental ill individual who is in desperate need of treatment to combat the years of abuse and undiagnosed personality disorders he has endured. He has committed a crime and needs to be punished.  There are no excuses provided.  However, the Court is here to impose a sentence appropriate for Yaisel Rodriguez and to do so should understand the circumstances and the person behind the crime.

The Court shall receive under separate cover a letter from forensic psychiatrist, Dr. Merry Haber, who has provided the Court with some insight to the Defendant. Dr. Haber has evaluated the Defendant and diagnosed him with Post-Traumatic Stress disorder resulting from the sexual abuse he endured as a child.

The trauma he suffered stunted his development emotionally and mentally. The Defendant never developed any friendships and was often bullied in school.   His own family suffers from severe dysfunction in that despite living in the same home, he has not spoke to his father since his childhood because the Defendant resents him for never noticing the abuse.

The Defendants entire life was "online," from his hobby of buying and selling reptiles to his only contact with people outside his family. As previously indicated, he rarely left the house

and when he did it was in the company of his parents because he does not drive. He did not support himself and was never employed fulltime.

The relationship with C.W. was one of the only "friendships" the Defendant has ever had. In the mind of the Defendant, his relationship with C.W. was no different than that of two young adult or adolescent homosexual males. They liked the same things, lived with their parents, did not work and spent countless hours online.   He wanted C.W. to succeed in life and wanted to help him in anyway he could. As the Defendant reflects back on his action, he sees how wrong he was and how his actions were completely inappropriate and illegal.

The nature and circumstances of the offense, history and characteristics of the Defendant, and overall impact of this situation are not fully accounted for in this sentence calculation of 360 months.

**(2)(A) The need to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.**

The Defendant does not need to be incarcerated for 30 years in order to understand the seriousness of the offense or to respect the law.   The Defendant has shown remorse, acknowledged responsibility, and has tried to atone for his acts by providing any cooperation he can to the Government. The Defendant sufficiently understands the seriousness of the offense and respects the law based on all that has occurred.   Just punishment can be had without the imposition of a pseudo life sentence.

**(2)(B)  The need to afford adequate deterrence to criminal conduct.**

Adequate deterrence can be shown without such an extensive sentence.

**(2)(C)The need to protect the public from further crimes of the defendant.**

The Defendant understands the gravity of his actions and concerns that he may one day reoffend. He also understands his need for treatment and is desperate to receive it. Dr. Merry Haber, who has provided a letter detailing her findings after evaluating the Defendant, has indicated that the Defendant is a good candidate for sex offender treatment and treatment for post-traumatic stress disorder. If the Defendant receives the treatment that he needs while under supervision upon his release, the Defendant would cease to be a threat to the public. Increased incarceration does not accomplish anything other than to delay the very thing that will make a safe and functioning member of society.

**(2)(D) The need to provide the Defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner**.

As previously discussed, the Defendant is in dire need of mental health treatment. Following the execution of the search warrant on the Defendant's home and briefly prior to incarceration, the Defendant had begun attending outpatient treatment on his own after finally disclosing the abuse he suffered as a child.

The Bureau of Prisons offers Sex Offender Treatment at only nine facilities nationwide. Only two of these facilities are inpatient treatment facilities. The remaining programs are outpatient programs that typically treat inmates during the last three years of their

16

incarceration.[11]  Assuming the Defendant qualifies, it is likely he will only become eligible during the last three years of his incarceration. In other words, should the Court deem the recommendations of the Government and of Probation are appropriate under the circumstances; the Defendant will be incarcerated for nearly 27 years before receiving the recommended treatment.

Alternatively, if the Court imposes the minimum mandatory sentence of fifteen years, the Defendant could receive treatment sooner and upon his release, could continue to receive treatment at his or his family's own expense.

**(3)      The kinds of sentences available.**

This Honorable Court has discretion to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth.  The goals of 18 U.S.C. § 3553(a) can be accomplished without the incarceration computed in the PSR.  The purpose of 18 U.S.C. § 3553(a) can be met with a sentence that does not exceed the minimum mandatory.

**(4)      The Sentencing Guidelines range.**

180-360 months incarceration.

**(5)      Any pertinent policy statements of the Sentencing Commission or Congress**

A report to Congress regarding Child Pornography Offenses by the USSC provides insight into their intentions and primary concerns with the production and subsequent distribution of child porn:

---

[11]  *See* Federal Bureau of Prisons, *Sex Offenders*, www.bop.gov,
https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last visited Apr. 14, 2016).

17

*"Child pornography victims are harmed initially during the production of images, and the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims. Many victims live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification and potentially for "grooming" new victims of child sexual abuse."*[12]

The USSC is echoing the concerns and reoccurring themes they encountered after reviewing over 2,000 cases. It is imperative to draw a distinction between the overarching public policy reasons for imposing such severe sentences under the guidelines and the reality of this case. Despite the fact that pecuniary gain is no longer an element of the offense of production of child pornography, the approach of attacking the larger and global market for child pornography remains the same. In the instant offense, the production of the child pornography and distribution was limited to the Defendant and C.W. It was never intended for mass distribution or for the eyes of anyone except the Defendant and C.W.

A letter from the Department of Justice to the Sentencing Commission following the February 27, 2013 report on Child Pornography concedes the fact that in cases of this nature, the current guidelines can "at times under-present and at times over-represent the seriousness of an offender's conduct and the danger an offender poses."[13] The Defendant falls tragically in the

---

[12] *See Report to Congress on Federal Child Pornography Offenses*, United States Sentencing Commission, (February 27, 2013), *available at* http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

[13] *See Letter to the Honorable Judge Patti Saris, Chair of the United States Sentencing Commission,* Department of Justice (March 5, 2013), *available at* http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf.

later of the two cases and despite the best of intentions, the guidelines grossly over emphasize the Defendants culpability in this case.

**(6)     The need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

According to the Sentencing Commission's 2013 Report on Child Pornography, the average sentence for production of child pornography was 269.1 months.[14] This number has nearly doubled since 2004, which was the first year since the PROTECT Act created a minimum mandatory sentence of fifteen years. Prior to that the average sentence was 153.4 months.

The majority of offenders, like the Defendant, had no previous criminal history.  The Defendant is significantly younger than the majority of offenders in production cases, the average age for offenders being 40.

As an illustration, the Defendant would like to provide the Court with three particularly egregious cases in which the defendants received lower sentences than what is currently being recommended for the Defendant:

-   In *U.S. v. David Larry Rasmussen*, the defendant, in his 40s, was convicted of production of child pornography after taking pictures of three children, ages 4, 3, and one and a half, in their homes and in his own home in Mountain Lake, Minnesota. This Defendant victimized the children of neighbors who had trusted him with their children in order to produce

---

[14] *See* February 27, 2013 Report to Congress on Federal Child Pornography Offenses by the United States Sentencing Commission.

and distribute child pornography for his sexual gratification and that of his friends. He received a sentence of 204 months. [15]

- In *United States v. Madison,*[16] the defendant pled guilty to charges of sex trafficking of children by fraud, force, or coercion. Madison's criminal conduct involved forcing a 16–year old into "commercial sex" trade by physically abusing her. The Court imposed a 168–month sentence and the sentence was upheld by the Eleventh Circuit.

- In *United States v. McCaffrey,*[17]  the Seventh Circuit affirmed a sentence at the top of the statutory range after Vincent McCaffery, pled to one count of receipt and possession of child pornography. There was overwhelming evidence in that case that Vincent McCaffrey, a former priest, who capitalized on priestly assignments to manage youth groups, choirs, and altar boys in various parishes, sexually molest boys in his supervision "hundreds" of times over prior to being arrested after federal customs agents found images on his computer containing children under 12 and depicting sadomasochistic situations. In that case, the district court departed upward, using discretion, common sense and evidence about the conduct of the offender. He was sentenced to 240 months.

With cases like *Rasmussen*, *Madison,* and *McCaffrey*, where you have defendants man who victimized children and acts of violence receiving sentences like 168-240 months and the

---

[15] *See Mountain Lake Man Sentenced to 17 Years for Production of Child Pornography,* Federal Bureau of Investigation, Minneapolis Division, Press Release (April 24, 2015), *available at* https://www.fbi.gov/minneapolis/press-releases/2015/mountain-lake-man-sentenced-to-17-years-for-production-of-child-pornography.
[16] *477 F.3d 1312, 1313–14 (11th Cir.2007).*
[17] *437 F.3d 684, 686 (7th Cir.2006).*

average sentence for this offense is 269.1 months, it is wholly unjust to sentence Yaisel Rodriguez to the sentence calculated by the guidelines.

**(7)**     **The need to provide restitution to the victims.**

The Government has not provided the Defendant with any restitution figure therefore there is no restitution to consider at this time.

<u>**CONCLUSION**</u>

Based on the aforementioned, the Defendant implores this Honorable Court to grant a significant downward variance to the computed Guidelines' sentence pursuant to 18 U.S.C. § 3553(a).

s/Ramon de la Cabada
Ramon de la Cabada, Esquire
Florida Bar No. 898279
Law Office of Ramon de la Cabada, P.A.
1101 Brickell Ave., Ste 1103, North Tower
Miami, FL 33131
Telephone: (305) 443-7100
Facsimile: (305) 443-1932
Email: Ray@ramondelacabada.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed via CM/ECF on April 27, 2016.

s/ Ramon de la Cabada
Ramon de la Cabada